AMCO ELECTRIC, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 20157.

United States Court of Appeals
Ninth Circuit.
March 2, 1966.

Millikan, Montgomery, Franciscus & Olafson, C. E. Millikan, Jr., Pasadena, Cal., for petitioner.

Arnold Ordman, Gen. Counsel., Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Paul J. Spielberg, Attys., N. L. R. B., Washington, D. C., for respondent.

Before MERRILL and DUNIWAY, Circuit Judges, and TAVARES, District Judge.

MERRILL, Circuit Judge.

This case presents the question[1] whether findings of the National Labor Relations Board which reject determinations of the trial examiner on matters of veracity and credibility can in this case be said to be "supported by substantial evidence on the record considered as a whole."[2]

At issue is the motive of petitioner in discharging one Donald Crowe. The trial examiner concluded that the discharge was for legitimate business reasons and unconnected with union activity. The Board disagreed finding that it was because of "union or concerted activities" in which Crowe had engaged, and concluding that petitioner had thereby engaged in unfair labor practices within the meaning of section 8(a) (3) and (1) of the National Labor Relations Act (Taft-Hartley Act) 61 Stat. 140, as amended 73 Stat. 525 (1959), 29 U.S.C. § 158(a) (3), (1) (1964). An order to cease and desist and for reinstatement was entered from which petitioner here seeks relief by review.

Petitioner was engaged as an electrical subcontractor on a construction job at Vandenberg Air Force Base in California. Work was being carried on at several sites which were separated from each other by a matter of some miles. Communication between sites was by radio-telephone, petitioner having installed radio-phones in most of its vehicles. Juris-

1. Considered in NLRB v. Waterfront Employers, 211 F.2d 946, 953 (9th Cir. 1954), following Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950).

2. "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." Labor Management Relations Act (Taft-Hartley Act) § 10(e), 61 Stat. 147, 148 (1947), 29 U.S.C. § 160(e) (1964).

dictional disputes had arisen from time to time between the electrical workers employed by petitioner and ironworkers employed by another subcontractor. One Savage served as union steward for petitioner's employees.

On the day in question, April 27, 1964, Crowe, an employee of petitioner, was working at "C site." He noticed some ironworkers engaged in work which properly fell within the province of electrical workers. He looked around for his foreman and failing to see him took matters into his own hands. He first persuaded the ironworkers to cease work until the jurisdictional question of who should do the work could be settled. He then proceeded to place a call from a nearby radio truck to Frank Lowater, petitioner's maintenance foreman. As the trial examiner stated in his findings:

> "The principal question presented hinges on the contents of Crowe's radio communication with Lowater."

The trial examiner found that Crowe had ordered Lowater to come to C site to perform the work in question and had been discharged for doing so; that the giving of such direction to the maintenance foreman by a journeyman employee, or by anyone not himself a foreman, was in violation of petitioner's collective bargaining agreement and also of union rules; that it constituted justification for discharge since a chaotic condition would result if every employee took upon himself a foreman's responsibilities.

The Board disagreed and found that Crowe had not given Lowater orders, but rather had only sought to have a message conveyed to his union job steward, Savage. The Board further found that "the sole reason for his discharge was his conduct in trying to communicate during working hours with his steward who was at a different work site." It concluded that under the circumstances Crowe "was engaging in a union or protected concerted activity."

The Board asserts that its own findings in regard to the contents of the radio conversation between Crowe and Lowater are supported by substantial evidence on the record as a whole and that therefore this court should affirm the Board decision.

We disagree. In our judgment the Board's finding that Crowe in his radio conversation did not give orders to Lowater, a foreman, is not supported by substantial evidence.

The chief support for the Board finding is the testimony of the complainant Crowe who stated that he twice attempted to reach Savage before calling Lowater, and that in calling Lowater he did so only to ask him to deliver a message to Savage and did not ask Lowater himself to come to C site. The Board also contends that the testimony of Lowater supports its findings. The Board refers to the direct examination of Lowater in the following terms: [3]

> "Lowater, when asked to relate the conversation with Crowe, testified that Crowe asked him if Savage was there; that Lowater, who was approaching site 23, replied that Savage was there; and that Crowe then asked if Lowater would tell Savage 'to come over here to Charlie site. The ironworkers are doing our work' or something to this effect".

The Board also states:

"Although the trial examiner set forth this testimony of Lowater, which, in our opinion, clearly and explicitly affirms Crowe's testimony, he relied in this connection on the respondent's cross-examination of Lowater which included the following: Q. Is it possible he told you to come over to Charlie site? A. It is possible."

---

3. The Board also refers to the testimony of Savage and Milne who testified that Lowater said Crowe said he wanted Savage to come to C site. In our view it is difficult if not impossible to draw any reliable conclusion regarding the question of whether Crowe gave orders during his radio conversation from the testimony of Savage and Milne who did not overhear that conversation.

The findings of the trial examiner contrasted strikingly with those of the Board. First, the examiner attached no weight to the testimony of Crowe. In this regard the examiner stated:

"Crowe's claim that he attempted to contact Savage first is rejected as being not worthy of credence." [4]

Later he makes reference to the "irresponsible nature of Crowe's testimony."

Second, the examiner attached little weight to Lowater's testimony. In his findings he quoted much more of Lowater's testimony than that referred to by the Board. On direct examination Lowater testified that in response to Crowe's call "I acknowledged his call and said I would be right over." Following the "It is possible" answer to which the Board referred, the following question and answer were given:

"Q. So the conversation, as far as you can recall it, could have included both a request to find Doc Savage and ask him to come to Charlie site, and also a request for you to come over to Charlie site? A. Right. As these people need a maintenance electrician they call me by radio. I don't question who or to what effect. I just go over to the site. I don't ask them whether they demand me or request me."

In our judgment Lowater's testimony when considered as a whole supports the findings of the trial examiner rather than those of the Board. The findings of the examiner are further supported by the testimony of Norman Coghlin, petitioner's vice president and field superintendent at the job, who had overheard Crowe's phone call to Lowater.

■ Considering the record as a whole the only evidence which we believe supports the Board's findings is the testimony of the complainant, Crowe. While the Board is not bound by the credibility determinations of the trial examiner, nevertheless the probative weight which may be properly given to testimony is severely reduced when an impartial experienced examiner who has observed the witnesses and lived with the case has drawn different conclusions.[5]

■ Having concluded that the Board's preliminary finding that Crowe gave no orders is not supported by substantial evidence, we must conclude that the Board's ultimate determination that Crowe was engaging in protected union activity similarly lacks support.[6] Accordingly the Board order is not entitled to enforcement.

It is so ordered.

---

4. Anyone in a vehicle with a radio turned on would have heard Crowe's efforts to reach Savage, yet no witness testified to having heard such efforts and at least two witnesses testified that while listening they had heard no such attempt.

5. In this regard the court in Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1950), stated:
"We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion."

To the same effect are Boeing Airplane Co. v. NLRB, 217 F.2d 369, 375–376 (9th Cir. 1954); NLRB v. Pyne Molding Corp., 226 F.2d 818, 819 (2nd Cir. 1954); NLRB v. Sheboygan Chair Co., 125 F.2d 436, 439 (7th Cir. 1942).

6. Even if we assume that Crowe's radio conversation included a request for his union steward's presence as well as an order to Lowater, we must still conclude that a finding that he was discharged for the request and not the order would not be supported by substantial evidence. The record is clear that on overhearing Crowe's radio communication Coghlin's immediate reaction was outrage over Crowe's assuming the authority of a foreman. The order that his time sheet be made up followed promptly.