Barbara POGUE, Petitioner,

v.

UNITED STATES DEPARTMENT OF
LABOR; Lynn Martin, Secretary,*
Respondents.

No. 90–70318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1991.

Decided Aug. 5, 1991.

* Lynn Martin, who succeeded Elizabeth H. Dole as Secretary of the Department of Labor, is substituted as respondent in the case. Fed.R. App.P. 43(c)(1).

**1288**

Ann H. Lyons, Gorman & Waltner, Oakland, Cal., for petitioner.

Anne Payne Fugett, U.S. Dept. of Labor, Washington, D.C., for respondents.

Before HUG, SCHROEDER and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

Barbara Pogue, a former civilian employee of the Department of the Navy, petitions for review of the Secretary of Labor's dismissal of her complaint and rejection of an Administrative Law Judge's ("ALJ") determination that the Navy had unlawfully retaliated against her for engaging in "whistleblowing" activity protected under four separate environmental statutes.[1] Concluding that the Secretary's decision to dismiss Pogue's complaint is not supported by substantial evidence, we reverse the Secretary's determination.

I.

*FACTS AND PROCEEDINGS*

Pogue, a nuclear engineer, began working for the Navy as a civilian employee in 1980, and transferred to the Mare Island Naval Shipyard in 1982. In September 1986, Pogue began working at the shipyard's Occupational Safety and Health Office ("Code 106"), a hazardous waste oversight position charged with the responsibility for surveying and reporting on hazardous waste compliance.

Between September 14 and October 28, 1986, Pogue prepared seven internal reports identifying numerous instances of hazardous waste noncompliance at the shipyard. In mid-November 1986, Pogue sent a letter to the Shipyard Commander reporting the environmental violations she had uncovered, and expressing her belief that her immediate supervisor, Michael Noble, had thwarted her efforts of performing her assigned task of promptly and accurately reporting on hazardous waste noncompliance at the shipyard. On December 3, 1986, the Commander informed Noble of the letter and a series of angry confrontations between Noble and Pogue ensued. These confrontations were in turn followed by several formal and informal disciplinary actions taken against Pogue by the Navy and Noble, including a transfer, a suspension, an official reprimand, and a withholding of a pay increase.

On February 20, 1987, Pogue filed an administrative complaint against the Navy with the Department of Labor, alleging unlawful retaliation for her preparation of the hazardous waste reports, in violation of the whistleblower protection provisions of the federal environmental statutes. After an investigation, this complaint resulted in a determination that Pogue had in fact been discriminated against in violation of her whistleblower protection rights.

The Navy appealed this determination to an ALJ. After a two-week evidentiary hearing where Noble testified for five days, the ALJ issued a decision that also concluded that the Navy had unlawfully retaliated against Pogue for her hazardous waste reports. The ALJ recommended that the Navy be ordered to remove and destroy all documents related to disciplinary actions taken against Pogue, terminate any further adverse personnel actions, effectuate Pogue's salary increase, and ensure that Pogue's new position with the Navy be equivalent to her former position in Code 106. The ALJ further recommended denying Pogue's claim for compen-

---

**1.** Specifically, Pogue seeks protection of the "whistleblower" provisions of the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C. § 9610), the Federal Water Pollution Control Act (33 U.S.C. § 1367), the Resource Conservation and Recovery Act (42 U.S.C. § 6971), and the Toxic Substances Control Act (15 U.S.C. § 2622).

satory damages, and also that her attorney's fees request be reduced.

On May 10, 1990, the Secretary entered a final decision and order rejecting the ALJ's recommended determination and dismissing Pogue's complaint. This appeal followed.

## II.

### DISCUSSION

#### A. Applicable Legal Standards

■ "The Secretary's decision is reviewed under the Administrative Procedure Act, 5 U.S.C. § 706," and "must therefore be set aside if it is unsupported by substantial evidence or if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Lockert v. United States Dept. of Labor*, 867 F.2d 513, 516–17 (9th Cir.1989) (setting forth standard of review for "whistleblower" cases under the Energy Reorganization Act, 42 U.S.C. § 5851) (citing *Mackowiak v. University Nuclear Sys., Inc.*, 735 F.2d 1159, 1162 (9th Cir.1984)). In the labor context, this court has noted that an ALJ's "determinations of credibility based on demeanor are [not] conclusive on the [National Labor Relations] Board." *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1079 (9th Cir.1977). Likewise, in a review of a decision of the Merit Systems Protection Board, this court stated that "[i]n reviewing an appealed case, the board is entitled to substitute its judgment for that of the ALJ. However, on review by this court, the findings supporting the ALJ's judgment constitute a part of the record we review." *Curran v. Dept. of Treasury*, 714 F.2d 913, 915 (9th Cir.1983) (citations omitted).

■ When, as here, the findings of the ALJ differ from those of the final administrative decisionmaker, the following standards of review have been held to apply:

> The fact that the findings of the ALJ differ from those of the full board does not alter the requirement that we affirm MSPB decisions if supported by substantial evidence. However, consideration of the ALJ's findings will require a more searching scrutiny of the record. Special

deference is to be given the ALJ's credibility judgments. A finding of the full board that rests solely on testimony discredited by the ALJ is not supported by substantial evidence and cannot be sustained.

*Id.* (citations omitted). As stated in the labor context, " 'when the Board second-guesses the Examiner and gives credence to testimony which he has found—either expressly or by implication—to be inherently untrustworthy, the substantiality of that evidence is tenuous at best.' " *Penasquitos Village*, 565 F.2d at 1077 (quoting *Ward v. NLRB*, 462 F.2d 8, 12 (5th Cir. 1972)). As the Supreme Court has explained, "[w]eight is given the [ALJ's] determinations of credibility for the obvious reason that he or she 'sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records.' " *Id.* at 1078 (quoting *NLRB v. Walton Manufacturing Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962)). Thus, " 'the probative weight which may be properly given to testimony is severely reduced when an impartial experienced examiner who has observed the witnesses and lived with the case has drawn different conclusions.' " *Id.* at 1077 (quoting *Amco Electric v. NLRB*, 358 F.2d 370, 373 (9th Cir.1966)).

We believe these standards properly govern our review of the Department of Labor's adjudication of Pogue's whistleblower complaint under the federal environmental statutes and therefore apply them to this case.

#### B. Analysis

■ Significantly, it is undisputed in this case that Pogue engaged in protected whistleblowing activities and that this was a motive for the disciplinary action. The Secretary defends her denial of relief, however, on the grounds that the Navy had independent legitimate reasons for taking disciplinary actions against Pogue that would have occurred in the absence of Pogue's whistleblowing activities. We therefore agree with the parties that the "dual motive" test set forth in *Mt. Healthy City*

*School Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) applies to this case, a test we previously have applied to a whistleblower case under the Energy Reorganization Act, 42 U.S.C. § 5851. *See Mackowiak,* 735 F.2d at 1164. "Under *Mt. Healthy,* once the employee shows that illegal motives played some part in the discharge, the employer must prove that it would have discharged the employee *even if* he had not engaged in protected conduct." *Id.* (Emphasis in original).

■ We are unpersuaded by the Secretary's conclusion that the Navy met its burden of proving that Pogue would have been subjected to the same disciplinary actions even if she had not engaged in the protected activity. There is no dispute that Pogue's employment history prior to her whistleblowing activity was comprised mostly of "satisfactory" performance reports with the one exception of a "marginal" rating on a critical factor. The Secretary also does not dispute that, while Pogue's employment history revealed certain problems with work performance and getting along with co-workers, Pogue had never received any formal disciplinary actions during her six-year employment with the Navy until *after* she engaged in whistleblowing activity.

■ We similarly find the Secretary's rejection of many of the ALJ's credibility determinations to be unsupported by the record. The critical event in this case, Pogue's November 1986 letter to the Shipyard Commander regarding her reports of hazardous waste noncompliance, was followed by Noble's angry reaction and confrontation with Pogue. At the evidentiary hearing before the ALJ, Noble justified his reaction to the letter based on Pogue's failure to follow his instructions to send the letter through the "chain of command." The ALJ specifically rejected this testimony, however, as a mere pretext for Noble's anger over Pogue's reporting of Noble's participation in an alleged "cover-up" of the environmental violations.[2] Because the

ALJ necessarily evaluated Noble's credibility in determining his motives for his reaction to the letter, the Secretary's disregard of this finding is unsupported by the record. *See Loomis Courier Serv., Inc. v. NLRB,* 595 F.2d 491, 496 (9th Cir.1979) ("[W]hen the determination of motive or purpose hinges entirely upon the degree of credibility to be accorded the testimony of interested witnesses, the credibility findings of the Trial Examiner are entitled to special weight and are not to be easily ignored.") (citations and internal quotations omitted).

■ In support of her decision, however, the Secretary points to other negative aspects of Pogue's behavior and work performance that occurred prior to her transmittal of the letter to the Shipyard Commander. As examples of this conduct, the Secretary emphasizes two confrontational meetings between Pogue and Noble in October and November 1986 where Noble contends Pogue displayed "disrespectful and insubordinate" behavior towards him. The Secretary's own characterization of this behavior, however, reveals that both incidents involved Pogue's whistleblowing reports. In the Secretary's own words, in the October meeting "Pogue accused Noble of 'playing politics' . . . regarding her hazardous waste reports," whereas in the November meeting "Pogue . . . believed Noble had [her] remove[d] . . . from the Shipyard Commander's meeting on hazardous wastes." Department of Labor's Brief at 37. As illustrated by the Secretary's own examples of Pogue's purported "disrespectful and insubordinate" behavior, we conclude that the Secretary has failed to justify its disregard of the ALJ's finding that these incidents were the result of Pogue's reaction to Noble's failure to respond to her protected whistleblower reports.

Finally, we are unpersuaded that the Secretary's rejection of the ALJ's finding regarding Noble's motives for taking disciplinary actions against Pogue after her transmittal of the whistleblower letter to the

---

**2.** It is undisputed that Pogue was authorized to bypass the "chain of command" and send the letter directly to the Commander, and that the

letter constituted protected whistleblower activity.

Shipyard Commander is adequately supported by the record. The Secretary has pointed to a number of specific instances of misconduct which she claims illustrate Pogue's defiant attitude towards Noble's supervision. Although, in isolation, Noble's reactions to these instances of misconduct might have justified some disciplinary action, we conclude that the Secretary has failed to meet her burden of proving that this disciplinary action would have occurred in the absence of Pogue's whistleblowing activity.

 It is well-settled that "[i]n dual motive cases, the employer bears the risk that 'the influence of legal and illegal motives cannot be separated....' " *Mackowiak*, 735 F.2d at 1164 (quoting *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 403, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983)). The ALJ's determinations of the legality of Noble's motives in disciplining Pogue are necessarily dependent upon the ALJ's assessment of Noble's credibility at the evidentiary hearing. Giving the ALJ's findings the "special weight" we are required to afford such determinations, *see Loomis Courier*, 595 F.2d at 496, we are convinced that much of the evidence of Pogue's prior work performance and defiant attitude cited by the Secretary could reasonably be attributed to the Navy's admitted retaliation against her for her whistleblower reports. *See NLRB v. Florida Medical Center, Inc.*, 576 F.2d 666, 672–73 (5th Cir.1978). Moreover, Pogue presented evidence, relied on by the ALJ, that the disciplinary actions taken against her were substantially disproportionate to discipline imposed by the Navy in the past. Finally, the Secretary does not dispute that it failed to present any evidence to show, for example, that other employees had received similar disciplinary action based on similar violations.

In sum, we conclude that the Secretary has failed to separate adequately the influence of the mixed motives for imposing discipline against Pogue in this case, and has therefore failed to meet its burden of proving that the Navy's adverse actions would have occurred even if Pogue had not engaged in protected whistleblower activity.

## III.

### CONCLUSION

The Secretary of Labor's decision that the Navy would have taken the same action against Pogue even in the absence of her protected whistleblowing activities is unsupported by the record. The Secretary's order dismissing Pogue's complaint is therefore REVERSED. This case is REMANDED to the Secretary for a determination of Pogue's damages, reasonable attorney's fees, and any other remedies that may be warranted.

REVERSED and REMANDED.