**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HEATHER K. L. CONAHAN, as
Personal Representative of the
Estate of Gaye S. Glaser,
                 *Plaintiff-Appellant,*

v.

KATHLEEN SEBELIUS, in her official
capacity as U.S. Dep't of Health
and Human Services Secretary,
                 *Defendant-Appellee,*

KAISER FOUNDATION HEALTH PLAN,
INC.,
    *Defendant-Intervenor-Appellee.*

No. 09-17510

D.C. No.
1:08-cv-00443-
DAE-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
October 11, 2011—Honolulu, Hawaii

Filed November 1, 2011

Before: Diarmuid F. O'Scannlain, Richard C. Tallman, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

19823

## COUNSEL

Robert G. Klein (argued), Dayna H. Kamimura-Ching, McCorriston Miller Mukai MacKinnon LLP, Honolulu, Hawaii, for plaintiff-appellant Heather K.L. Conahan, personal representative of the Estate of Gaye S. Glaser.

Harry Yee, Assistant United States Attorney (argued); Florence T. Nakakuni, United States Attorney, Honolulu, Hawaii, for defendant-appellee Kathleen Sebelius.

Dianne Winter Brookins (argued), Allison Kirk Griffiths, Alston Hunt Floyd & Ing, Honolulu, Hawaii, for defendant-intervenor-appellee Kaiser Foundation Health Plan, Inc.

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Heather K.L. Conahan, personal representative of the Estate of Gaye S. Glaser, appeals the district court's affirmance of the Medicare Appeals Council's (MAC) ruling that Defendant-Intervenor-Appellee Kaiser Foundation Health Plan, Inc. (Kaiser) is not required to pay for Glaser's liver surgery. Conahan contends that by refusing to cover the procedure, Kaiser failed to comply with 42 C.F.R. § 422.112(a)(3), which requires Medicare Advantage plans to make their services available, accessible, and adequate, and 42 C.F.R. §§ 422.112(a)(9) and 422.113(b)(iii), which require the plans to cover "urgently needed services." We agree with the district court that substantial evidence supports the MAC's decision, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Health maintenance organizations provide Medicare-covered services through Medicare Advantage plans. *See* 42 U.S.C. § 1395w-27. Medicare Advantage beneficiaries usually receive medical services within the network of providers established by their HMOs. However, federal regulations require Medicare Advantage plans to cover certain out-of-plan medical care, including emergency and "urgently needed services." 42 C.F.R. §§ 422.112; 422.113.

Glaser was enrolled in Kaiser Permanente Senior Advantage, a Medicare Advantage plan. After Glaser experienced a chronic cough throughout 2006, Kaiser performed numerous

tests, and diagnosed Glaser with adenocarcinoma (cancer of the liver) favoring cholangiocarcinoma (cancer of the bile ducts).

Kaiser's Tumor Board, a group of approximately thirty physicians, from both within and outside of Kaiser, determined that complete removal of the tumor could leave too little liver for Glaser to survive, and that surgery would not eliminate the possibility of cancer recurrence. The Tumor Board recommended that Glaser instead undergo a form of chemotherapy, known as chemoembolization, to shrink the tumor, and Kaiser's General Surgery Department agreed. Dr. Ryan Takamori, Glaser's surgical oncologist, informed Glaser that Kaiser would not cover surgery, and Glaser was offered a second opinion from another Kaiser doctor.

Dr. Kevin Lin-Hurtubise, a physician who is unaffiliated with Kaiser, agreed to perform liver resection surgery on Glaser. Dr. Eric Matayoshi, Kaiser's Chief of General Surgery, told Glaser that Kaiser would not cover surgery performed by Dr. Lin-Hurtubise, and scheduled another appointment for Glaser to discuss her treatment options with Dr. Takamori. Glaser did not attend either Kaiser appointment. Instead, Dr. Lin-Hurtubise performed the surgery on October 12, 2006, during which he removed approximately 70% of Glaser's liver. Glaser suffered post-operative impairment of her brain and liver function, and remained in the hospital for approximately three weeks.

Glaser asked Kaiser to reimburse her nearly $150,000 for the surgery, and Kaiser denied the request. Glaser appealed Kaiser's denial to Maximus Federal Services (Maximus), a private contractor that reviews Medicare disputes. Maximus affirmed Kaiser's decision in January 2007. Glaser appealed Maximus's decision to an Office of Medicare Hearing and Appeals administrative law judge (ALJ), who took testimony from Glaser and Dr. Matayoshi in a June 27, 2007 telephone hearing. The ALJ reversed Maximus's decision on October

11, 2007, concluding that Kaiser failed to make its medical services available, accessible, and adequate, as required by 42 C.F.R. § 422.112(a)(3), and that Kaiser was obligated to pay for the out-of-plan liver resection surgery because it was an "urgently needed service" under 42 C.F.R. §§ 422.112(a)(9) and 422.113(b)(iii).

Kaiser appealed the ALJ's ruling to the MAC, which reversed the ALJ's decision on August 15, 2008. Glaser appealed the decision by filing a complaint against the Secretary of Health and Human Services (Secretary) in district court, and Kaiser intervened as a party. The district court affirmed the MAC on September 9, 2009, finding that substantial evidence supports the conclusion that the Medicare regulations do not require Kaiser to cover Glaser's surgery.

Glaser timely appealed the district court's affirmance of the MAC's ruling. Glaser died on March 6, 2011. Conahan, the personal representative of Glaser's estate, was substituted as the Plaintiff-Appellant in this case.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's order upholding the MAC's decision de novo. *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). The MAC's ruling is the final decision of the Secretary, *Heckler v. Ringer*, 466 U.S. 602, 607 (1984); thus we must uphold the MAC's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).[1] Substantial evidence

---

[1] Conahan argues that the ALJ's factual findings — not the MAC's — must be upheld if they are supported by substantial evidence. She cites *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999); *Morgan v. Apfel*, 169 F.3d 595 (9th Cir. 1999); and *Moncada v. Chater*, 60 F.3d 521 (9th Cir. 1995). However, in each of those cases, the ALJ's decision was the agency's final decision on review. Here, in contrast, the MAC's ruling was the agency's final decision. Thus, the district court correctly held that the MAC's ruling receives deference, and that we are not required to defer to the ALJ's factual findings.

"means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). The agency's interpretation of its own regulations receives "substantial deference" and "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citation and internal quotation marks omitted).

## DISCUSSION

### I. "Available, accessible, and adequate" services

[1] A Medicare Advantage organization must make its covered services "available and accessible." 42 C.F.R. § 422.112(a). If the organization's in-network specialty care is "unavailable or inadequate to meet the enrollee's medical needs," it must arrange out-of-network care. 42 C.F.R. § 422.112(a)(3). The Department of Health and Human Services (HHS) stated during its rulemaking procedures that this duty is triggered when, "for example, the plan includes no specialist qualified to treat an enrollee's rare condition." 65 Fed. Reg. 40,170, 40,199 (June 29, 2000).

Conahan contends that Kaiser's refusal to perform liver surgery rendered its services unavailable, inaccessible, and inadequate, and therefore Kaiser must cover the out-of-plan surgery. The MAC disagreed, concluding that Kaiser "denied the enrollee a referral to an out-of-network provider; it did *not* deny her medical care that was reasonably believed to be within the standard of appropriate medical care, as determined by multiple physicians[.]" We agree with the district court that substantial evidence supports the MAC's conclusion.

[2] The record contains abundant evidence that Kaiser thoroughly considered performing surgery, but determined that it would be too dangerous and ineffective. Dr. Matayoshi

testified to the ALJ that Kaiser's multidisciplinary Tumor Board concluded that the surgery would require removal of up to 80% of Glaser's liver, which would likely result in Glaser not having enough liver remaining to survive. The only physician to reach a different conclusion than the Tumor Board was Dr. Lin-Hurtubise, who performed the surgery. This disagreement does not significantly undermine the conclusion of approximately thirty physicians on the Tumor Board. *See Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.") (internal quotation marks and citation omitted).

**[3]** Moreover, the record contains substantial evidence that Kaiser developed a comprehensive plan to shrink the tumor with chemoembolization. Dr. Matayoshi testified that if the tumor shrank, Kaiser would reconsider whether to perform surgery. Dr. Matayoshi described Glaser's surgical oncologist, Dr. Takamori, as "our resource for all of our liver tumors" and "very well qualified" to treat Glaser. Conahan claims that the MAC should not have considered this evidence because Kaiser had not informed Glaser of the chemoembolization plan. However, the administrative record contradicts this claim. Dr. Matayoshi testified that he mentioned chemoembolization to Glaser in a telephone call before she underwent surgery. Moreover, Dr. Takamori planned to discuss further the treatment plan with Glaser, but Glaser failed to appear for her two scheduled appointments. The district court correctly rejected the "implicit contention that [Glaser] can refuse appointments with in-network providers and, at the same time, argue that alternative options were not made available to her."

Conahan contends that the MAC erred by relying on Dr. Matayoshi's testimony, which she claims the ALJ discredited. As support for her position, Conahan cites *Pogue v. United States Dep't of Labor*, 940 F.2d 1287 (9th Cir. 1991), in

which we held that "[s]pecial deference is to be given the ALJ's credibility judgments." *Id.* at 1289 (citation and internal quotation marks omitted). In *Pogue,* we reviewed the Secretary of Labor's dismissal of an employment complaint against the Navy. The ALJ in that case stated that testimony from the plaintiff's supervisor was not credible, but the Secretary of Labor nonetheless relied on that testimony. *Id.* at 1290-91. In contrast, the ALJ here did not find that Dr. Matayoshi's testimony lacked credibility. In fact, the ALJ's opinion does not explicitly mention Dr. Matayoshi's hearing testimony, and Conahan has not cited any authority that would require us to interpret the ALJ's silence on that testimony as a finding that the testimony lacks credibility. Furthermore, the ALJ wrote that he "accepts the medical opinions of all physicians' [sic] involved as opinions based upon their best medical assessment of the Appellant's condition at the time." Because the ALJ did not find that Dr. Matayoshi's testimony lacked credibility, the MAC was free to consider the evidence.

**[4]** In sum, we conclude that substantial evidence in the administrative record supports the MAC's determination that Kaiser's services were available, accessible, and adequate, and therefore that 42 C.F.R. § 422.112(a)(3) does not require Kaiser to pay for the surgery.

## II.  "Urgently needed service"

**[5]** Conahan also seeks reimbursement under 42 C.F.R. § 422.112(a)(9), which requires Medicare Advantage organizations to cover out-of-plan "urgently needed services." Such services are

> provided when an enrollee is temporarily absent from the [Medicare Advantage] plan's service (or, if applicable, continuation) area (or, *under unusual and extraordinary circumstances*, provided when the enrollee is in the service or continuation area but the

organization's provider network is *temporarily unavailable or inaccessible*) when the services are medically necessary and immediately required —

> (A) As a result of unforeseen illness, injury, or condition; and

> (B) It was not reasonable given the circumstances to obtain the services through the organization offering the [Medicare Advantage] plan.

42 C.F.R. § 422.113(b)(iii) (emphasis added).

Conahan contends that Kaiser's refusal to perform the surgery rendered its network "temporarily unavailable or inaccessible," making Glaser's out-of-plan liver resection an "urgently needed service" that Kaiser was required to cover. The MAC rejected this interpretation of the regulation, concluding that Kaiser's "recommendation against surgical resection of the enrollee's liver tumor did not render their provider network unavailable or inaccessible, even if this recommendation was against the enrollee's personal wishes."

**[6]** The MAC's conclusion is consistent with the text and history of the Medicare Advantage regulations. When it promulgated those regulations, HHS stated that the requirement to pay arises

> only under unusual and extraordinary circumstances, for services provided when the enrollee is in the service or continuation area, but the organization's provider network is temporarily unavailable or inaccessible, and such services are medically necessary and immediately required. We believe that examples of when this could arise would include unusual events *such as an earthquake or strike,* if such events impede enrollee access to care[.]

65 Fed. Reg. 40,170, 40,199 (June 29, 2000) (emphasis added). A health insurer's denial of coverage is not an extraordinary or unusual event, similar to an earthquake or labor strike.

**[7]** Conahan responds that earthquakes and strikes are "merely examples of situations that would make a plan unavailable." However, HHS specifically rejected this broader interpretation of the proposed regulation during the notice-and-comment period. A commenter asked HHS whether the "urgently needed services" exception would allow beneficiaries to "unilaterally obtain care out-of-plan if their [Medicare Advantage] organization did not provide the care they requested." *Id.* HHS replied that

> [t]here are other mechanisms in place to handle such situations. We may require a plan to take corrective action, where necessary, if a plan fails to provide services. In addition, services that the beneficiary believes he or she was entitled to receive from the [Medicare Advantage] organization, but that the organization denied or otherwise did not provide, may be appealed under the regulations in subpart M of part 422.

*Id.* HHS concluded that a denial of benefits does not constitute "unusual and extraordinary circumstances." This interpretation is neither plainly erroneous nor inconsistent with the regulation's plain text. Were we to accept Conahan's construction, Medicare Advantage organizations always would be required to pay for out-of-plan procedures they refuse to perform. Nothing in the regulation suggests that HHS intended such a sweeping result. Because we defer to the agency's reasonable determination that the "urgently needed services" exception is not triggered by a denial of coverage, Kaiser is not required to pay for the surgery.

## CONCLUSION

There is no dispute that Glaser faced a life-threatening medical condition. After learning of her precarious medical situation, she understandably acted swiftly to obtain what she believed was the best possible treatment. However, our decision does not turn on whether Glaser acted reasonably. Before us is the narrow legal question of whether the MAC correctly concluded that Medicare regulations do not require Kaiser to pay for the surgery. We hold that substantial evidence supports that conclusion.

**AFFIRMED.**